# COFFEY'S

# PROBATE DECISIONS.

ESTATE OF DOMINGO GHIRARDELLI, DECEASED.

[No. 14,521; decided March 20, 1896.]

**Pretermitted Child—Proof of Paternity.**—It is incumbent upon a person claiming to be the child and pretermitted heir of the testator to establish her claim as such child to a reasonable and moral certainty—a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it. The question of paternity should be established by strict and plenary proof.

On March 5, 1895, Dominga Barbagelata filed a petition for partial distribution. On March 20, 1895, she filed an amended petition; and on April 16, 1895, the executors filed their answer thereto. The other facts are stated in the opinion.

Otto Tum Suden, for the petitioner.

A. Comte, Jr., for the executors.

Timothy J. Lyons, for Eugene Ghirardelli, one of the heirs.

COFFEY, J. Domingo Ghirardelli died on January 17, 1894, in Italy, leaving a will which was admitted to probate in this court March 14, 1894, and the executors therein named, Domingo Ghirardelli and Louis Ghirardelli, were appointed and qualified and assumed the administration of the estate, and are still as they have been continuously since so engaged.

Petitioner makes her application under section 1307, Civil Code, which is as follows: "When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was

intentional, such child, or the issue of such child, must have the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in the preceding section''; averring that she is a daughter of the deceased testator and of his deceased wife, Carmen Ghirardelli, having been born August 4, 1845, in the city of Lima, Peru, but that nevertheless the said testator omitted to provide for her in and by his will, and that said omission was not intentional but was accidental and an oversight on his part. This averment is answered by respondents, who deny that she is a daughter of said deceased testator and his deceased wife Carmen, but is the daughter of said Carmen by a former husband; and that the said deceased testator did not omit intentionally or otherwise to provide for said Dominga Barbagelata in his will, and that she is not an heir of said deceased Domingo, but that he did make a provision in his will, subdivision sixth thereof, in terms as follows:

"I bequeath to Dominga or Domenica Martin, wife of Francesco Barbagelata, domiciled in said San Francisco, California, so much two thousand dollars corresponding to nearly ten thousand Italian lire.''

Respondents claim that the said Dominga or Domenica Martin, wife of Francesco Barbagelata, is the applicant Dominga Barbagelata, and that they are ready, upon proper application, to carry out the terms of the quoted clause of the will.

The will was written in the Italian language, and the authenticated copy in translation of said testament, as admitted to probate, is as follows:

"The present testament is taken from the collection of Testaments of the current year and inscribed in the collection of Acts between Living for the year 1894, at No. 5 of the Bundle and No. 3232 of the relative Index.

"No. 1 of the Index.
"1894.   11th January.
"Public Testament.

"Reigning, Umberto First, by the grace of God and by the will of the Nation King of Italy.

"The year one thousand eight hundred and ninety-four, the eleventh of the month of January, Thursday, at nine

o'clock of the morning, in Rapallo, in the bedroom of the first floor fronting Montebello street, in a house the property of the heirs of Bernardo Raffo, situated at No. 4 of said street;

"Before me, Agostino Pietro Norero, Notary, residing in Rapallo, County of Chiavari, Province of Genoa, Kingdom of Italy; inscribed at the Notarial Council of Chiavari and in the presence of Messrs. Giovanni Croce of the late Innocenzo, druggist, born in Genoa; Giuseppe Bozzo of Nicolo, sea captain, born in Carnogli; Giacomo Massone, of the late Giacomo, living on his income, born in Buenos Ayres; and Nicolo Cuneo, of the late Ambrozio, merchant, born in Rapallo, all residing and domiciled in this place, witnesses duly qualified and personally known and requested by me;

"Personally constituted himself Mr. Domenico Ghirardelli of the late Giuseppe, merchant, born in Rapallo, and dwelling in this place since sometime; domiciled and residing in San Francisco, of California, personally known by me Notary and by said witnesses;

"Who finding himself in the fullness of his intellectual faculties, as it appeared to me Notary and witnesses that from beginning to end are assisting to this act, although he lies sick in bed, has of his own mouth and to the full understanding of all, in the presence of said witnesses, declared to me Notary and he following his dispositions of last will that by my care as Notary and in the said presence have been reduced to writing as follows:

## "First.

"I premise before all that I possess nothing in Italy and that all my property, commercial and real estate, is in the district called San Francisco of California (United States of America).

## "Second.

"I premise, also, that I am a widower and have only six children, namely, Domenico, Giuseppe, Luigi, Eugenio, Elvira, wife of Charles Sutton, and Angela, wife of Christian Jorgensen, all now domiciled in San Francisco of California.

## "Third.

"I declare also that in said San Francisco of California I possess a considerable establishment for the manufacture of chocolate, mustard and other kinds of business; and so is declared:

## "Fourth.

"I make my heirs for sixth and equal portion of all I possess in said California, including said establishment with all the utensils, tools, furnitures, machinery and other as it result per last inventory made in said City of San Francisco, my said six children, Domenico, Giuseppe, Luigi, Eugenio, Elvira, wife of Charles Sutton, and Angela, wife of Christian Jorgensen.

## "Fifth.

"I bequeath the usage and pursuit or continuation of said establishment or industrial factory to three of my said children, namely, Domenico, Giuseppe and Luigi Ghirardelli, brothers, who in correspondence for said usage and pursuit of said establishment shall disburse to each of the other heirs number six thousand dollars money of the United States of America, corresponding nearly to thirty thousand Italian lire, namely, six thousand dollars to Eugenio Ghirardelli; six thousand dollars to Elvira Ghirardelli; and six thousand dollars to Angela Ghirardelli; meaning that such correspondence shall be understood only as a bonus or premium for said usage and pursuit, without injuring said Eugenio, Elvira and Angela Ghirardelli in their rights of property and for one-sixth part to each of said establishment.

## "Fifth.

"I bequeath to my nieces Angela and Luigia, sisters Grasso daughters of the late Agnese Ghirardelli my sister and to each of them and for once so much two hundred dollars corresponding nearly to one thousand Italian lire, declaring that my said nieces are domiciled in Genoa.

## "Sixth.

"I bequeath to Dominga or Domenica Martin, wife of Francesco Barbagelata, domiciled in said San Francisco of

California, and for once so much two thousand dollars corresponding to nearly ten thousand Italian lire.

"Seventh.

"I appoint my testamentary executors said Domenico, Giuseppe and Luigi Ghirardelli, brothers, my children, and Christian Jorgensen, my son-in-law, granting to them all the powers allowed by the law, including that of incorporating, if they think it convenient and necessary, said business and factory according the laws and usages of said San Francisco of California.

"Eighth.

"Whenever any of my heirs should not accept or should impugn this my testament, I bequeath to the same one dollar money of California as his lawful share.

"Ninth.

"I revoke and annul whatever testament made prior to this.

"And I Notary requested have received this testament by me Notary reduced in writing as by the testator has been declared to me, and as testament I Notary have read it in a loud and intelligible voice and explained the contents to the testator, in the presence of said witnesses, who with him have with me Notary signed previous declaration that said Domenico Ghirardelli, in presence of said witnesses makes, that said testament and all in it contained is in conformity with his will.

"The present, written by a trusty person, occupy seven pages of two standard papers.

"D. GHIRARDELLI,
"GIOVANNI CROCE,
"NICOLO CUNEO,
"GIUSEPPE BOZZO,
"GIACOMO MASSONE,
"AGOSTINO PIETRO NORERO,

"Notary Province of Genoa, County of Rapallo, Office of the Civil State.

"Taken from the registers of death certificates for the year 1894.

"No. 27, Part 1st.
"GHIRARDELLI DOMENICO.

"The year one thousand eight hundred ninety-four on the seventeenth day of January, at thirty minutes past nine o'clock ante meridiem in the City Hall.

"Before me Massoni Andrea deputy Syndic by act of February twelve, one thousand eight hundred eighty-three, duly approved official of the Civil State of the County of Rapallo, appeared Raffo Nicolo of the late Bernard, aged fifty-six years, proprietor, domiciled in this county, and Castagneto Bartholomew, of the late Giacomo, aged fifty-six years, watchmaker, domiciled in this county, who have declared to me that at . . . . minutes past one o'clock ante meridiem of today, in the house situate in Montebello street at number four, died Ghirardelli Domenico, aged seventy-seven years, well to do, residing in this county, born in this county of the late Giuseppe domiciled in life in this county and of the late Ferretto Maddalena domiciled in this county widower of Carmen Alvarado.

"To this act were present as witnesses, Boero Enrico, aged twenty-five years, painter, and Canessa Paolo, aged twenty-eight years, civil employee, both residing in this county.

"After reading the present to all they signed with me.

"NICOLO RAFFO,
"CASTAGNETO BARTOLOMEO,
"E. BOERO,
"CANESSA PAOLO, Witness,
"ANDREA MASSONI.

"For copy in conformity with the original.

"Rapallo, Jany. 18th 1894.
"for the Syndic
"Official of the Civil State
"'Signed' PEJRANO NICOLO.

"Registered in Rapallo the 19th Jany 1894, No. 534, Vol. 56 Public Acts. Exacted six lire (l. 6).

"The Receiver.
"(Signed) G. BONINI.

"For copy in conformity to its original which single sheets have the signature required by law, delivered in eleven pages,

this included, at request of Mrs. Angela Ghirardelli, of the late Domenico, wife of Christian Jorgensen.

"Rapallo, January 19th, 1894.

"(Seal)      AGOSTINO PIETRO NORERO, Notary.

"(Rubric).

"Seen. The above affixed signature saying—Agostino Pietro Norero Notary is authenticated.

"Stamp Chiavari the 20th January 1894.

"The President of the Tribunal.

"(Seal)      P. ELIANTONIO.

"(Rubric)."

The counsel for petitioner concedes that the evidence is conflicting, but considers that it is not irreconcilable. The question of paternity should be established by strict and plenary proof.

The petitioner comes here claiming a share as heir at law. To entitle her claim to the consideration and confidence of the court she must have proved that she was the illegitimate child of the deceased testator, Domingo Ghirardelli, and Carmen, legitimized by subsequent matrimony, and pretermitted in his will.

There is no doubt, as petitioner admits, that Domingo Ghirardelli and Carmen entered into the marriage relation in Peru, and the preponderance of evidence is that the mother of the applicant, Carmen Alvarado, was married to a man named Martin, a physician, prior to meeting Ghirardelli, and that she did not meet him until the child Dominga, the applicant here, was seven or eight months old.

It was incumbent upon the petitioner to establish her claim as child to a reasonable and moral certainty—a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it. This is declared judicially to be proof beyond a reasonable doubt, such as the counsel for claimant, Mr. Tum Suden, insisted, in another case, must exist in this case.

Specious as is the same gentleman's argument in this case, it is unsupported by the warp and woof of the evidence—here and there a slender and brittle thread of testimony

suggestive of the fondness of a father and of affectionate treatment by him and of resentment at her ingratitude and lack of filial regard for her mother, but absolutely no particle of proof of paternity. Her own testimony is enough to show that she did not realize any such natural relation, and even if her position made a draft upon sympathy, in view of all the facts and circumstances, it is clear that she received from him throughout life and in his testamentary provision indulgent treatment. The evidence in this case shows that Domingo Ghirardelli was a man of kind heart and honorable impulse, and that when he espoused the mother of this petitioner there was no stain upon the character of either, and that he treated his wife and her child with respect and affection.

Notwithstanding the terms of endearment used in his correspondence with his stepchild and her husband—terms natural enough and not necessarily compromising between him and one whom he had virtually but not legally adopted, and whom he had treated with the tenderness of a parent—there is nowhere any evidence arising to the dignity of proof that he either was or acknowledged himself to be her actual father. On the contrary, there is positive and unimpugnable proof that such was not the case. One important item, outside of the will, is of immense importance by way of illustration: Ghirardelli's olographic memorandum of the births of his children, giving the year, day, date and hour of birth, even the very minute, but omitting Dominga, the petitioner. Is it probable or possible that if she were his daughter he would have omitted her, his eldest born? It is, to say the least, intensely improbable. It is not to be accepted· as a basis upon which to rest a conclusion to the contrary. I have suggested that she was virtually adopted by him when he intermarried with her mother, and that this was her own notion is shown by her letter in evidence dated Oakland, July 19, 1894, asking "for an adopted daughter's share" of the estate. This very intelligent lady could not have written that letter of imploration if she knew or believed she had the right to an equal share under the law. If she were a legally adopted daughter she had the same right as the common lawful offspring of Domingo and Carmen; if she were the

illegitimate child she had, by subsequent matrimony, an equal right; but she was neither, and she knew it. Aggrieved and disappointed at the testamentary discrimination, in view of the virtual adoption, she may have been; but she had been denied no legal right and had no legal claim, and her own voluntary communication establishes her knowledge and belief. The astuteness of the claim that she was named Dominga after the deceased Domingo is suggestive of the cleverness that is proverbial of her race; but the fact is that she was named, according to the custom of her country, after the saint upon whose feast day she was born, St. Dominic, August 4th—a common custom in Catholic countries.

Quantitatively and qualitatively, in number and quality, the case of paternity is against the petitioner; her birth was honorable, but her father was not Domingo Ghirardelli, actual or adopted. But even if it were not so clearly shown by a remarkable series of witnesses and an extraordinary exhibition of evidence—a unanimity of a most remarkable and respectable array of witnesses as to the declarations of the deceased Domingo—the identity of the petitioner, Dominga Barbagelata, with the person described in article or clause sixth of the will, hereinabove quoted: "Dominga or Domenica Martin, wife of Francesco Barbagelata, domiciled in said San Francisco," is incontestable, and makes unnecessary the other issue, except, perhaps, for the vindication of the family honor and the exoneration of the name of the mother of these children, the virtuous mother of the petitioner and of the others named as his children by her in the last will and testament of Domingo Ghirardelli, senior.

The legacy in article sixth of that will must refer to petitioner, and cannot possibly indicate any other person. There is not and there never was anyone else who answered to that particular and specific description; even if it were a misdescription, so long as the object be identifiable, it may not be avoided, but it is not a misdescription; the identity of the person in the mind of the testator is certain, clear, definite and specific; it is impossible of misapprehension in the light of the evidence in this case; the applicant here, and she alone, responds to the terms of this most explicit provision.

Counsel for applicant argued orally that the cardinal rule of construction is that the will must show affirmatively that testator had his child or children in mind; it must show on the face of the will that he intended to omit provision for the child. If the testator thought she was not his child, how could he have her in mind as his child? If he mentally doubted, disputed or denied his paternity as to her, then he could not have formed an intention to disinherit, because according to his belief she had not inheritable quality; assume, says Mr. Tum Suden, that he knew her to be his child, then it might be different; but that is not this case, counsel insists, for his declaration that he had but six children excluded her. Counsel's argument is creditable to his fertile fancy, but the cardinal canon of construction and the facts against his contention and his client are too strong to be successfully assailed. His claim is not only not affirmatively established, it is overthrown by a mass of direct and positive proof.

Application denied.